**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

HEATHER LYNN KENNEDY,      )
                              )
            Plaintiff,     )
                              )
         v.            )      1:18CV432
                              )
ANDREW M. SAUL,          )
Commissioner of Social Security,[1]  )
                              )
            Defendant.     )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Heather Lynn Kennedy, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 14; see also Docket Entry 12 (Plaintiff's Brief); Docket Entry 15 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] The United States Senate confirmed Andrew M. Saul as the Commissioner of Social Security on June 4, 2019, and he took the oath of office on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Nancy A. Berryhill as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging a disability onset date of March 20, 2014.  (Tr. 287-96.)  Upon denial of those applications initially (Tr. 116-61, 210-15) and on reconsideration (Tr. 162-209, 218-35), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 238-39).  Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing.  (Tr. 65-101.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 12-27.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 285-86, 393-94), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1.   [Plaintiff] met the insured status requirements of the [] Act through December 31, 2016.
>
> 2.   [Plaintiff] has not engaged in substantial gainful activity since March 20, 2014, the alleged onset date.
>
> 3.   [Plaintiff] has the following severe impairment: spasmodic dysphonia.
>
> . . .
>
> 4.   [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5.   . . . [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional

limitations: should avoid tasks that require frequent speaking as the primary job function.

. . .

6.   [Plaintiff] is capable of performing past relevant work as a drying [sic] tender.   This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity.

. . .

In the alternative, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that [she] also can perform.

. . .

7.   [Plaintiff] has not been under a disability, as defined in the [] Act, from March 20, 2014, through the date of this decision.

(Tr. 17-27 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."   Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).   However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited."   Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead,
the Court "must uphold the factual findings of the ALJ if they are
supported by substantial evidence and were reached through
application of the correct legal standard." Hines, 453 F.3d at 561
(internal brackets and quotation marks omitted). "Substantial
evidence means 'such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion.'" Hunter v. Sullivan,
993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402
U.S. 389, 401 (1971)). "It consists of more than a mere scintilla
of evidence but may be somewhat less than a preponderance." Mastro
v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal
quotation marks omitted). "If there is evidence to justify a
refusal to direct a verdict were the case before a jury, then there
is substantial evidence." Hunter, 993 F.2d at 34 (internal
quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not
undertake to re-weigh conflicting evidence, make credibility
determinations, or substitute its judgment for that of the [ALJ, as
adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal
brackets and quotation marks omitted). "Where conflicting evidence
allows reasonable minds to differ as to whether a claimant is
disabled, the responsibility for that decision falls on the

[Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a

---

[2] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' _i.e._, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment,

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

the ALJ must assess the claimant's residual functional capacity ("RFC")." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

### B. Assignments of Error

According to Plaintiff, the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he medical evidence does not support the ALJ's finding at step two of [the SEP] that [Plaintiff's] seizure disorder is a nonsevere medically determinable impairment" (Docket Entry 12 at 3 (bold font and single-spacing omitted)); and

2) "[t]he medical evidence does not support the ALJ's finding at step two of [the SEP] that [Plaintiff's] migraine headaches are a nonsevere medically determinable impairment" (id. at 7 (bold font and single-spacing omitted).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 15 at 4-21.)

### 1. Seizure Disorder

Plaintiff's first assignment of error asserts that the ALJ erred by finding that Plaintiff's seizure disorder failed to qualify as a severe impairment at step two of the SEP. (See Docket Entry 12 at 3-7 (referencing Tr. 17, 20).) Although valid in several respects, Plaintiff's contentions ultimately do not warrant relief.

"At step 2 of the [SEP], [the ALJ] determine[s] whether an individual has a severe medically determinable physical or mental impairment or combination of impairments that has lasted or can be expected to last for a continuous period of at least 12 months or

end in death." Social Security Ruling 16-3p, <u>Titles II & XVI:</u>
<u>Evaluation of Symptoms in Disability Claims</u>, 2017 WL 5180304, at
*11 (Oct. 25, 2017) ("SSR 16-3p"). An impairment fails to qualify
as "severe" if it constitutes "only a slight abnormality . . .
which would have no more than a minimal effect on an individual's
ability . . . to perform basic work activities." Social Security
Ruling 85-28, <u>Titles II and XVI: Medical Impairments that Are Not</u>
<u>Severe</u>, 1985 WL 56856, at *3 (1985) ("SSR 85-28"). Applicable
regulations further identify "basic work activities" as including:

>   (1) Physical functions such as walking, standing,
>   sitting, lifting, pushing, pulling, reaching, carrying,
>   or handling;
>
>   (2) Capacities for seeing, hearing, and speaking;
>
>   (3) Understanding, carrying out, and remembering simple
>   instructions;
>
>   (4) Use of judgment;
>
>   (5) Responding appropriately to supervision, co-workers
>   and usual work situations; and
>
>   (6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1522(b), 416.922(b). Plaintiff bears the burden
of proving severity at step two. <u>Hunter</u>, 993 F.2d at 35; <u>see also</u>
<u>Kirby v. Astrue</u>, 500 F.3d 705, 708 (8th Cir. 2007) ("Severity is
not an onerous requirement for the claimant to meet, but it is also
not a toothless standard . . . ." (internal citation omitted)).

Here, at step two, the ALJ found Plaintiff's spasmodic
dysphonia a severe impairment but noted that Plaintiff "ha[d] a

number of nonsevere medically determinable impairments that impose
no ongoing functional limitations" (Tr. 17), including "anxiety and
mood disorder" (id.; see also Tr. 23), as well as "seizure
disorder," "headaches," "mild degenerative disc disease and [left]
lower extremity symptoms," "mild carpal tunnel syndrome," (Tr. 21),
"mild asthma," and "gastrointestinal issues" (Tr. 22). With regard
to Plaintiff's seizure disorder, the ALJ provided the following
analysis:

> In March 2014, [Plaintiff] was treated for reported
> seizure activity. She was diagnosed [sic] prescribed
> medication and instructed to stay out of work for three
> days and avoid driving. CT scan of her head and MRI of
> [her] brain were negative, and although one
> [electroencephalogram ("EEG")] showed sharp waves in
> the left mid-temporal area consistent with seizure disorder,
> multiple other EEGs were normal with no evidence of clear
> epileptiform activity. Thus, the record fails to
> establish that [Plaintiff] even has a true seizure
> disorder. Even if such a disorder were documented,
> Social Security Ruling 87-6[, Titles II and XVI: The Role
> of Prescribed Treatment in the Evaluation of Epilepsy,
> 1987 WL 109184 (1987) ("SSR 87-6"] states that seizures
> can generally be controlled by proper treatment and can
> only be shown to be uncontrollable when the treating
> source indicates that frequent seizures are occurring
> despite anticonvulsant therapy. The record is unclear if
> [Plaintiff] was compliant with anticonvulsant therapy, as
> there is no documentation of laboratory testing showing
> therapeutic blood levels. Moreover, the record shows
> that [Plaintiff] was noncompliant with doctors'
> recommendations not to drive, as she admitted on multiple
> occasions that she drives a car. The [ALJ] also finds it
> notable that the record shows some inconsistencies
> regarding the frequency of [Plaintiff's] alleged
> seizures. For instance, [Plaintiff] testified that she
> has seizures every day, but treatment notes from 2015
> show that she reported "spells" only when stressed or
> overheated. [Plaintiff] reported no recent seizures from
> September 2015 to May 2016, at which time [she]
> reportedly passed out after getting hot and dizzy, and

subsequent treatment notes indicate that she was doing reasonably well. Accordingly, the [ALJ] finds [Plaintiff's] seizure disorder is a nonsevere medically determinable impairment. There is no evidence in the record to support [Plaintiff's] allegations of significant dizziness and balance problems, as the record shows she reported only occasional dizziness, and she was repeatedly found to have normal musculoskeletal examinations.

(Tr. 20 (internal citations omitted).)

Plaintiff first faults the ALJ for relying on purportedly normal EEGs to support the non-severity finding (Docket Entry 12 at 3 (citing Tr. 20)), noting that "a normal [EEG] does not mean that a patient did not have a seizure" (id. at 3-4 (citing https://www.epilepsy.com/learn/diagnosis/eeg/ what-if-its-normal)). Plaintiff further points out:

"Approximately one-half of all EEGs done for patients with seizures are interpreted as normal. Even someone who has seizures every week can have a normal EEG test. This is because the EEG only shows brain activity at the time of the test. If you aren't having a seizure at that time, there may not be any unusual brain waves for the test to record."

(Id. at 4 (quoting https://www.epilepsy.com/learn/diagnosis/eeg/ what-if-its-normal).)

Plaintiff's criticism of the ALJ's reliance on allegedly normal EEGs has merit. As an initial matter, although the ALJ claims "multiple [] normal EEGs" exist in the record (Tr. 20 (emphasis added)), the citations the ALJ provides only link to two EEGs performed on July 15, 2014, and September 25, 2015 (see id. (citing Tr. 437, 658, 756)). Moreover, the EEG performed on

11

September 25, 2015, does not reflect "normal" findings; rather, it showed <u>mild slowing</u> of the brain activity in Plaintiff's <u>left temporal region</u> indicating "a <u>mild [] degree of neurophysiological disturbance</u> in [that] area" (Tr. 756 (emphasis added)). That finding remained consistent with an earlier EEG performed on February 20, 2015, which revealed "sharp waves in the <u>left mid-temporal</u> [which] indicate[d] discharging focus from within that area <u>consistent with a seizure disorder</u>" and "a <u>mild slow wave abnormality</u> in both temporal regions indicating a <u>slight neurophysiologic disturbance in both temporal areas, worse on the left</u>" (Tr. 630 (emphasis added)). Equally as significant, effective September 29, 2016, the Commissioner amended the listings for neurological disorders and clarified that a claimant need not produce an abnormal EEG to meet Listing 11.02 (Epilepsy). <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 11.00H.5 ("We do not require EEG test results; therefore, we will not purchase them. However, if EEG test results are available in your medical records, we will evaluate them in the context of the other evidence in your case record."); <u>see also</u> Revised Medical Criteria for Evaluating Neurological Disorders, 81 Fed. Reg. 43048-01, 43054-55 (July 1, 2016).

The ALJ also erred by relying on SSR 87-6 to fault Plaintiff for not producing evidence of her serum anticonvulsant drug levels. (<u>See</u> Tr. 20.) As Plaintiff argues (<u>see</u> Docket Entry 12 at 4), the

Commissioner rescinded SSR 87-6 effective March 3, 2017, <u>see</u> https://www.ssa.gov/OP_Home/rulings/di/01/SSR87-06-di-01.html (last visited June 12, 2019), which occurred after the ALJ's hearing on February 24, 2017, but before the ALJ's decision on April 13, 2017. Moreover, effective on September 29, 2016, the Commissioner amended the listings for neurological disorders and no longer requires serum drug levels to meet Listing 11.02. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 11.00H.3 ("We do not require serum drug levels; therefore, we will not purchase them. However, if serum drug levels are available in your medical records, we will evaluate them in the context of the other evidence in your case record."); <u>see also</u> Revised Medical Criteria for Evaluating Neurological Disorders, 81 Fed. Reg. 43048-01, 43054.

Plaintiff additionally challenges the ALJ's observation that "'the record show[ed] that [Plaintiff] was noncompliant with doctors' recommendations not to drive, as she admitted on multiple occasions that she dr[ove] a car.'" (Docket Entry 12 at 5 (quoting Tr. 20 (in turn citing Tr. 446-51, 572-624)).) According to Plaintiff, "'at the second step of [the SEP], [] medical evidence alone is evaluated in order to assess the effects of the impairment(s) on [the] ability to do basic work activities'" (<u>id.</u> (quoting SSR 85-28, 1985 WL 56856, at *4)) and thus "the non-medical evidence of [Plaintiff's] driving is irrelevant to the step-two issue of the severity of her seizure disorder" (<u>id.</u> at 6).

At step two, if, as in this case, the objective evidence alone does not establish a severe impairment, the ALJ must "consider an individual's _symptoms_ and _functional limitations_ to determine whether his or her impairment(s) is severe," SSR 16-3p, 2017 WL 5180304, at *11 (emphasis added). Part of that determination involves assessment of the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), which include consideration of a claimant's ability to engage in daily activities, SSR 16-3p, 2017 WL 5180304, at *7. Thus, the ALJ properly considered evidence that, despite Plaintiff's doctors' repeated recommendations that Plaintiff not drive (see, e.g., Tr. 83, 400, 417, 439, 635, 641, 655), Plaintiff continued to drive against her doctors' recommendations (see Tr. 20 (citing Tr. 446-47 (containing Plaintiff's conflicting statements to consultative psychological examiner Dr. Gregory A. Villarosa that a friend drove her to the examination, that she had not driven since March 2014, and that her doctor told her to stop driving, but that she took her kids to school and picked them back up regularly), 599 (reflecting Plaintiff's admission that she drove to her appointment with psychiatrist Dr. Snezana Z. Cvejin))).

Moreover, Plaintiff "has interpreted th[e] language [of SSR 85-28] too narrowly. Read in context, it appears that in SSR 85-28, the [SSA] was clarifying that a person can be found not disabled at [s]tep [t]wo based solely on their medical impairments

without considering the claimant's age, education, or past work. Id.[ at *4.] While [s]tep [t]wo is limited solely to evaluating a person's medically determinable impairments, it is not limited strictly to objective medical evidence." Pardo v. Colvin, No. CV-14-02307-TUC-CKJ-DTF, 2016 WL 703179, at *2 (D. Ariz. Feb. 2, 2016) (unpublished), recommendation adopted, 2016 WL 695830 (D. Ariz. Feb. 22, 2016) (unpublished).[6]

Plaintiff also takes issue with the ALJ's determination that "'the record shows some inconsistencies regarding the frequency of [Plaintiff's] alleged seizures.'" (Docket Entry 12 at 6 (quoting Tr. 20).) In particular, Plaintiff disputes the ALJ's observations that, although Plaintiff "'testified that she has seizures every day, [] treatment notes from 2015 show that she reported spells only when stressed or overheated,'" as well as that Plaintiff "'reported no recent seizures from September 2015 until May 2016, . . . and subsequent treatment notes indicate that she was doing reasonably well.'" (Id. (internal citation and quotation marks omitted).) The ALJ's finding of "inconsistencies regarding the frequency of [Plaintiff's] alleged seizures" misses the mark in two respects. First, although the ALJ found that Plaintiff's testimony "that she ha[d] seizures every day" did not match Plaintiff's

_____

[6] The interpretation of SSR 85-28 offered by the court in Pardo harmonizes with other regulatory provisions governing step two. For example, in analyzing the severity of certain mental impairments, the ALJ must evaluate the claimant's degree of limitation in the ability to adapt or manage himself or herself which, in turn, involves consideration of a claimant's ability to maintain personal hygiene and attire. See 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00.E.4.

seizure-related treatment notes (Tr. 20 (emphasis added)), Plaintiff actually testified to having seizures "[t]hree to four times a week" (Tr. 81), i.e., nearly half as often as the ALJ stated. Second, the record does not support the ALJ's finding that treatment notes subsequent to May 2016 "indicate that she was doing reasonably well." (Tr. 20.) Indeed, just four days after Plaintiff's visit with her treating neurologist on May 5, 2016 (at which time she reported two possible seizures in the last week), she suffered a seizure, fell off her porch, and fractured her nasal bone (see Tr. 683, 687-88, 818-24).

Plaintiff also contends that "the ALJ failed to consider that the [s]tate agency physicians who evaluated the severity of [Plaintiff's] medical impairments at the initial . . . and reconsideration levels concluded that the medical evidence of record establishe[d] her seizure disorder to be a severe medically determinable impairment." (Docket Entry 12 at 7 (citing Tr. 148, 173).)[7] Although the ALJ did not specifically discuss the reconsideration-level state agency physician's finding that Plaintiff's seizure disorder constituted a severe impairment, the ALJ stated that he considered the physician's "findings . . . regarding the nature and severity of [Plaintiff's] physical impairments" and accorded the physician's opinions "reduced weight" as "not consistent with the overwhelmingly normal physical findings

---

[7] At the initial stage of review, a single decision-maker, rather than a physician, evaluated Plaintiff's physical RFC. (See Tr. at 130-31, 152-53.)

and the intermittent nature of [Plaintiff's] symptoms." (Tr. 25 (emphasis added).) Moreover, Plaintiff did not attack the ALJ's decision to afford reduced weight to the state agency physician's opinions. (See Docket Entry 12 at 7.)

In light of the foregoing analysis, the ALJ's only valid ground for finding Plaintiff's seizure disorder non-severe, i.e., Plaintiff's continued driving against her doctors' recommendations, does not amount to substantial evidence to support the non-severity finding, especially considering the de minimis nature of the inquiry. Thus, the Court should find that the ALJ erred by finding Plaintiff's seizure disorder non-severe. However, for the reasons explained in more detail below, the ALJ's error in this regard remains harmless under the circumstances presented here. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

### 2. Migraine Headaches

In Plaintiff's second and final issue on review, she seeks relief due to the ALJ's failure to find Plaintiff's migraine headaches a severe impairment at step two of the SEP. (See Docket Entry 12 at 7-10 (referencing Tr. 17, 20.) Again, Plaintiff has

shown mistakes by the ALJ, but not of the sort that requires remand under the circumstances presented.

The ALJ supplied the following rationale for the non-severity finding:

> Although [Plaintiff] complained of near daily headaches, . . . a CT scan of her head and MRI of her brain showed no abnormal findings. No physicians assessed [Plaintiff] as having any limitations due to her complaints of headaches, and [Plaintiff] is able to maintain a household, drive, care for her children, and perform many other robust activities of daily living despite her condition. Most significantly, the record contains no medical documentation of headaches occurring with sufficient frequency to impose any ongoing functional limitations.

(Tr. 20 (internal citation omitted).) Plaintiff attacks each of the grounds provided by the ALJ for finding Plaintiff's headaches non-severe. (See Docket Entry 12 at 7-10.)

First, Plaintiff challenges the ALJ's reliance on a negative CT scan and MRI to support the non-severity finding, arguing that, "according to the Mayo Clinic, such radiological studies are not used by neurologists to diagnose migraine headaches or to evaluate the[ir] severity", but rather "'to rule out other possible causes for [the patient's headache] pain if [the patient's] condition is unusual, complex, or suddenly becomes severe.'" (Id. at 8 (quoting https://www.mayoclinic.org/diseases-conditions/migraine-headache/diagnosis-treatment/drc-20360207).) Thus, Plaintiff maintains that her "negative radiological studies are [] medically

18

irrelevant to the severity of her migraines." (Id.)[8]  Indeed,
Plaintiff's negative CT scan on March 21, 2014 (see Tr. 397) and
negative MRI on May 29, 2014 (see Tr. 437) did not preclude her
treating neurologist from diagnosing Plaintiff on August 28, 2014,
with "[m]igraine with aura, intractable, with status migrainosus"
(Tr. 439 (emphasis added)).  Thus, the ALJ's reliance on those
negative scans to discount the severity of Plaintiff's migraine
headaches constitutes error.

Plaintiff next contests the ALJ's statement that "'[n]o
physicians assessed [Plaintiff] as having any limitation due to her
complaints of migraine headaches.'" (Docket Entry 12 at 8-9
(quoting Tr. 20).)  According to Plaintiff, "[t]he [s]tate agency
medical consultants who evaluated [Plaintiff's] medical impairments
at the initial . . . and reconsideration levels concluded that her
migraine headaches [we]re a severe medically determinable
impairment." (Id. at 9 (citing Tr. 148, 173.)  The Commissioner
counters that, "although the [state agency] physicians listed
'migraines' as a severe impairment, none of the limitations they
identified appear related to migraine headaches specifically, as
opposed to the other impairments the physicians found severe,
including mild degenerative disc disease and seizures." (Docket

---

[8] The Commissioner, in response, does not specifically defend the ALJ's reliance
on the negative CT scan and MRI but instead argues the "the ALJ did not stop his
analysis at the lack of objective evidence." (Docket Entry 15 at 13.)

Entry 15 at 14 (citing Tr. 152-53, 199-202).)[9]  The Commissioner's
argument fails, because the state agency physician at the
reconsideration level specifically included "migraines" in the
explanation for the limitation to medium exertion work and the
preclusion of concentrated exposure to extreme heat and hazards.
(Tr. 176-78, 199-201.)  Although the ALJ ultimately accorded the
state agency consultants' opinions reduced weight (see Tr. 25), the
record nevertheless contradicts the ALJ's statement that "[n]o
physicians assessed [Plaintiff] as having any limitation due to her
complaints of migraine headaches."  (Tr. 20 (emphasis added).)

Plaintiff also faults the ALJ for relying in part on
Plaintiff's daily activities to find her migraine headaches non-
severe.  (Docket Entry 12 at 9 (quoting SSR 85-28, 1985 WL 56856,
at *4 ("At the second step of [the SEP], [] medical evidence alone
is evaluated . . . .")).)  However, as discussed above, where, as
here, the objective evidence alone does not establish a severe
impairment, the ALJ must "consider an individual's symptoms and
functional limitations to determine whether his or her
impairment(s) is severe," SSR 16-3p, 2017 WL 5180304, at *11
(emphasis added).  Part of that determination involves assessment
of the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and
416.929(c)(3), which include consideration of a claimant's ability

---

[9] Both parties appear to overlook that, at the initial level, a single decision-
maker, and not a physician, analyzed Plaintiff's physical RFC.  (See Tr. at 130-
31, 152-53.)

to perform daily activities, SSR 16-3p, 2017 WL 5180304, at *7. Moreover, as addressed above, Plaintiff "has interpreted th[e] language [of SSR 85-28] too narrowly." Pardo, 2016 WL 703179, at *2.

Lastly, Plaintiff disputes the ALJ's finding that "'the record contain[ed] no medical documentation of headaches occurring with sufficient frequency to impose any ongoing functional limitations.'" (Docket Entry 12 at 9 (quoting Tr. 20) (emphasis added).) According to Plaintiff, she reported either daily or near daily headaches in April 2014, February 2015, June 2015, and May 2016. (Id. at 9-10 (citing Tr. 415 (visit to neurologist on April 2, 2014, noting complaints of "daily headaches for years, worse since March 2014"), 626 (neurologist treatment note dated February 2, 2015, containing Plaintiff's report that "her headache [wa]s not better" and that "[s]he ha[d] [headaches] almost everyday"), 632 (progress note of June 4, 2015, from neurologist reflecting that Plaintiff had headaches "almost every day"), 675 (neurologist office visit on May 5, 2016, indicating Plaintiff had headaches "almost every day").)

In response, the Commissioner contends the ALJ's statement regarding Plaintiff's headache frequency finds support in the record, which shows that Plaintiff only "sometimes reported headaches to medical providers." (Docket Entry 15 at 15.) The Commissioner then details evidence of record that demonstrates the

occasional nature of Plaintiff's headaches. (See id. at 15-17.) However, the ALJ did not explain his conclusory statement that the record contained "no medical documentation of headaches occurring with sufficient frequency to impose any ongoing functional limitations" (Tr. 20 (emphasis added)), because the language quoted above, which constitutes the only place in the ALJ's decision where he discussed Plaintiff's headaches, lacks any specific discussion of Plaintiff's multiple visits to her neurologist for treatment of her headaches (see id.).

As three out of four of the ALJ's stated reasons for his non-severity finding lack merit, the ALJ's sole remaining reason, Plaintiff's performance of some daily activities, does not constitute substantial evidence to support the non-severity finding. Accordingly, the Court should find that the ALJ erred by deeming Plaintiff's migraine headaches non-severe; however, as discussed below, that error qualifies as harmless under the facts of this case. See generally Fisher, 869 F.2d at 1057 (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

### 3. **Harmlessness of ALJ Errors**

A finding at step two that Plaintiff has a severe impairment does not <u>require</u> the ALJ to include any limitations arising from such impairment in the RFC:

> The determination of a "severe" impairment at step two of the sequential evaluation process is a de minimis test, designed to weed out unmeritorious claims. <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, [153] (1987). A finding of de minimis limitations is not proof that the same limitations have the greater significant and specific nature required to gain their inclusion in an RFC assessment at step four. <u>See, e.g.</u>, <u>Sykes v. Apfel</u>, 228 F.3d 259, 268 n.12 (3d Cir. 2000).

<u>Hughes v. Astrue</u>, No. 1:09CV459, 2011 WL 4459097, at *10 (W.D.N.C. Sept. 26, 2011) (unpublished). Here, even assuming the ALJ should have found Plaintiff's seizure disorder and migraine headaches severe impairments, Plaintiff has not argued that such findings would have compelled the ALJ to adopt further restrictions in the RFC. (<u>See</u> Docket Entry 12 at 3-7.)

Moreover, as the Commissioner argues (<u>see</u> Docket Entry 15 at 18-21), even if Plaintiff's seizure disorder and migraine headaches limited her, as the reconsideration-level state agency medical consultant found, to medium-exertion work with no exposure to extreme heat, unprotected heights, or moving machinery (<u>see</u> Tr. 176-78, 199-201), the ALJ's alternative step five finding cited two light-exertion jobs (small parts assembler and laundry folder), available in significant numbers in the national economy, that did not involve exposure to any of those elements (<u>see</u> Tr. 27; <u>see also</u>

Tr. 97 (VE's testimony citing those jobs in response to the ALJ's dispositive hypothetical question)). *See* *Dictionary of Occupational Titles* ("DOT"), No. 706.684-022 (Assembler, Small Products I), 1991 WL 679050 (G.P.O. 4th ed. rev. 1991); DOT, No. 369.687-018, (Folder), 1991 WL 673072.

Given these considerations, Plaintiff has not demonstrated that the ALJ committed prejudicial error by finding Plaintiff's seizure disorder and migraine headaches non-severe.

### III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion to Reverse the Decision of the Commissioner of Social Security (Docket Entry 11) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 6, 2019